## IN THE MATTER OF RESPONSIBILITY OF THE CABINET.

OPINION OF THE JUSTICES OF THE SUPREME COURT TO THE CABINET.

Whenever by the Constitution and laws the Sovereign is required to act upon the advice of the Cabinet, the advice of the majority of the Cabinet must be taken.

DEPARTMENT OF THE JUDICIARY,

HONOLULU, H. I., April 10, 1890.

*To His Excellency, L. A. Thurston, Minister of the Interior:*

SIR: In replying to the question submitted by you on behalf of the Cabinet to the Justices of the Supreme Court, we will first set forth at large your letter:

### LETTER.

The Cabinet respectfully request your opinion upon the following question:

### Statement of Facts.

In accordance with Chapter 25 of the Laws of 1888, the commissioned officers of the Hawaiian Volunteers twice nominated Mr. V. V. Ashford for the office of Colonel of the Hawaiian Volunteers.

That such nominations were disapproved of by a majority of the Cabinet.

In accordance with the powers conferred upon the Cabinet by said Act, the Cabinet, on the 28th of March, 1890, presented to His Majesty for signature a commission appointing Mr. H. F. Hebbard to the position of Colonel of the Hawaiian Volunteers.

That thereupon three of the members of the Cabinet advised His Majesty to sign such commission.

That His Majesty thereupon replied to the Cabinet that "I have decided that I cannot adopt any recommendation made by my Ministers, unless they are a unit in advising the same," and declined to sign such commission.

That one member of the Cabinet claims that the position taken by His Majesty is correct and lawful.

That the other three members of the Cabinet claim that the position taken by His Majesty involves the assertion of a principle subversive of responsible constitutional government, as it would enable one member of the Cabinet to absolutely control its policy and action, while leaving the responsibility upon the entire Cabinet.

The majority of the Cabinet therefore claim that wherever by the Constitution or laws the Cabinet is obliged to take action, or the King is required to act upon the advice of the Cabinet, the meaning of such Constitution or statute requirement is that the King shall act upon the advice of a majority of the Cabinet, or that a majority of the Cabinet shall decide and govern the action to be taken by the Cabinet.

## Question.

Do the various statutes and constitutional provisions, referring to action to be taken by the Cabinet, and requiring the King to act upon the advice of the Cabinet, require that such action or such advice should be by all the members of the Cabinet, or is it sufficient that such action be taken or advice given by a majority of the Cabinet?

## OPINION.

The question in this letter involves an interpretation of clauses in Section 16 of the Act of 1888, "relating to the military forces of the Kingdom," which provides that "a majority of the Cabinet" having disapproved of the nomination made for a Colonel of Volunteers, the Minister of Foreign Affairs may, with "the approval of the Cabinet," present the name of another competent person to His Majesty.

What is required or intended by the word "Cabinet?" Is it something different from " A Majority of the Cabinet?"

We find in some other Statutes of the Session of 1888 examples of the use of these terms. Thus, in Section 1 of Chapter 65 it is said, "the Minister of the Interior, with the concurrence of a majority of the Cabinet, hereafter designated 'The Government,'" is authorized to enter into certain contracts respecting ramie. In Section 4 of Chapter 62 it is provided that the location, etc., of railroads "shall be submitted to the Cabinet for their approval, and such approval shall be certified by the signatures of a majority of the members of the Cabinet," while in Section 1 of this Act the Minister of the Interior is authorized to do an act "by and with the consent of the Cabinet." The same phrase is used in Chapter 16, Chapter 60, Chapter 61 and in Chapter 71. In Chapter 7 it is "with the approval of the Cabinet." In one case only do we find it expressed that the action of the Cabinet must be unanimous, in Chapter 17, Section 1 : "The Minister of the Interior with the unanimous concurrence of the Cabinet is hereby authorized" to contract for a certain inter-island cable telegraph.

The first two quotations may be considered to be legislative definitions of what may be the "Cabinet" for the purpose of an act of the Cabinet, viz., that the majority is the Cabinet, and the last quotation expresses the exception when it is intended that the four members of the Cabinet must concur—the sole exception that we have found in these Statutes.

In the Constitution a Cabinet of four members is provided for by Article 41. In Articles 27, 31, 42, 78 and 80 is prescribed what the "Cabinet" may or shall do. In Article 80 the phrase "Cabinet Council" is also twice employed. In only one Article are the members of the Cabinet treated individually, in Article 15, which prescribes that money shall not be drawn from the Treasury without legislative appropriation, except in the event of certain emergencies, and then "not without the concurrence of all the Cabinet and a majority of the whole Privy Council."

Our view to be drawn from these citations is that the action of the Cabinet is designed to be as a body and not as individuals. The individuality of the members is merged in the Cabinet or Cabinet Council.

The political theory of a Government having a responsible Ministry is that the members composing the Ministry entertain harmonious views respecting the general policy on which the Government shall be conducted, and respecting all important measures. We must look, if we seek for precedents outside of our own country, to Great Britain

The written Constitution of the United States does not provide for a Cabinet, and a Cabinet does not govern there, although the heads of departments are popularly termed the Cabinet. The President is himself responsible in the exercise of his functions. In regard to Great Britain, then, we may safely say that it is a thing unknown in theory and unheard of in fact, that a majority and a minority of the Government should submit their advice to the Sovereign. A member of the Government, not of the same opinion with his colleagues, would either silently acquiesce or, if the issue were important, would

withdraw from the Cabinet. The Cabinet could present but a single opinion, formulated by the Prime Minister.

It is evident that no judicial opinions bearing directly upon the case submitted can be found, for no such case could be presented to a Court in England or America. But as the Cabinet is here established by the Constitution and empowered by Statutes, the Justices of the Supreme Court, being duly asked, may give their interpretation. It seems to us to bear only one reasonable construction, and that is, that the advice and consent or approval of the Cabinet must be single, but not necessarily unanimous.

The most eminent publicists, such as Grotius, Savigny, Domat, base the authority of the majority on Natural Law. Boyer, an approved writer on Universal Public Law, quotes Savigny as saying "that the rule of law making the will of the majority that of the body in its co-operate capacity, is founded on Natural Law. For to require unanimity would be to impede the acts and will of the body corporate; and the rule is preserved in the Roman Law and adopted by the Canon Law." Such quotations could be multiplied.

In a Cabinet comprising four members an equal division will prevent action. It is a political situation for which must be found a political remedy. In the case of one member of the four being at variance with his three colleagues, we can find no other rule or principle than that the majority opinion is the opinion of the Cabinet, save in the expressly excepted cases.

In the Statute upon which this controversy arises it does not appear to us that the use of the term, "a majority of the Cabinet," imports that the other expression, "with the approval of the Cabinet," must be of the four members unanimously.

The provision, in Section 7 of the Act, that the name of the person elected to be colonel, by the commissioned officers of the Hawaiian Volunteers, shall be presented to His Majesty for commission, unless a majority of the Cabinet disapprove, is a concession to the wishes of the electors, who are presumed to be capable of making a fit choice. Even if such person should not meet the approval of one or even two of the Cabinet, his name

must be presented to the King for commission. Only if three of the Cabinet object is their election nullified. So also when, on the result of a second election, a second certification of a person to be commissioned as colonel is made, the Minister of Foreign Affairs is obliged to present this name for commission, although two of the Cabinet should object, and, as before, only if three of the Cabinet disapprove is this second election nullified. Thus far the Legislature has provided that the voice of the officers shall be respected in the selection of the colonel under whom they are to serve. But this goes no further. When a majority of the Cabinet disapprove of the officers' nominee, they then are to select a competent person to be commissioned as colonel. The two matters are distinct; one is the disapproval of a nominee of the officers of the volunteers, and the other is the selection of a person (without reference to the action of the officers) competent to act as their colonel. There is, then, nothing in the words of Section 10, prescribing that a majority of the Cabinet may disapprove a nominee, and thereafter the Minister of Foreign Affairs, with the approval of the Cabinet, may present another name for commission, requiring that the entire Cabinet concur. It should have the same construction which must be given in all other cases. The only coloring in support of a different view is the use of the two terms in the same Act. But we have shown a reason for the use of the word "majority," namely that not two members are sufficient to set aside the election by the officers. The "Cabinet" imports majority thereof, there being no exceptional and express provision that it must be the act of the four members.

We therefore answer the question of the Cabinet, that our construction of the Statutes and constitutional provisions, relating to action to be taken and advice to be given to the Sovereign by the Cabinet, is that such action and such advice is to be that of the majority thereof.

Your obedient servants,

A. F. JUDD,<br>LAWRENCE McCULLY,<br>RICH. F. BICKERTON.